UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

TERESA L O'MALLEY,                           Case No. 3:12-cv-326

      Plaintiff,                           District Judge Walter H. Rice
vs.                                          Magistrate Judge Michael J. Newman

NAPHCARE INC., *et al.*,

      Defendants.

---

**REPORT AND RECOMMENDATION[1] THAT: (1) DEFENDANT NAPHCARE'S MOTION TO DISMISS (DOC. 42) BE DENIED AS TO PLAINTIFF'S DEFAMATION CLAIM; AND (2) PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIM BE DISMISSED**

---

      This case is before the Court on Defendant NaphCare, Inc.'s ("NaphCare") partial motion to dismiss the third amended complaint. Doc. 42. In the motion, premised on Fed. R. Civ. P. 12(b)(6), NaphCare seeks dismissal of Plaintiff Teresa Lynn O'Malley's ("O'Malley") defamation and First Amendment retaliation claims. O'Malley filed a memorandum in opposition to NaphCare's motion. Doc. 44. NaphCare filed a reply memorandum. Doc. 46. The Court has carefully considered each of these documents, and NaphCare's motion to dismiss is now ripe for decision.

## I.

      For purposes of this motion to dismiss, the Court must: (1) view the Complaint in the light most favorable to Plaintiff, and (2) take all well-pleaded factual allegations as true. *Tackett*

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

*v. M&G Polymers*, 561 F.3d 478, 488 (6th Cir. 2009); *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

As pled in the third amended complaint, NaphCare is a correctional healthcare provider providing such services at the Montgomery County Jail. Doc. 41 at PageID 350. O'Malley, a forty-eight year old Licensed Practical Nurse, worked for NaphCare from 2007 through 2011 at the Montgomery County Jail. *Id.* O'Malley, in her third amended complaint, details a strained working relationship with certain superiors beginning in July 2011. *Id.* at PageID 351-57. During that month, Jeff McIntyre, one of O'Malley's supervisors, asked her to address a bed bug issue at the Montgomery County Jail. *Id.* at PageID 351-52. With McIntyre's permission, O'Malley contacted the Montgomery County Combined Health District ("Health District") for directions to address the issue. *Id.* at PageID 352. O'Malley purportedly implemented the directions provided by the Health District and, subsequently, the Health District arrived at the facility to perform a follow-up inspection. *Id.* at PageID 352-53. Ultimately, the Health District directed NaphCare to create a policy to manage parasites at the jail (including bed bugs) and O'Malley began hearing comments from superiors blaming her for the cost and time demands required to produce the policy. *Id.* at PageID 353.

Around this same time, O'Malley also began voicing concerns regarding a number of issues at NaphCare, including staffing shortages, the absence of an Electronic Medical Records System,[2] not providing inhalers for inmates with asthma or other conditions, and not timely performing substance abuse withdrawal protocol assessments for incoming detainees. *Id.* at

---

[2] The Ohio State Board of Nursing ("OSBN") and the Ohio State Board of Pharmacy ("OSBP") were examining the licensing of NaphCare's electronic medical records systems and its handling of medications. Doc. 41 at PageID 351. As a result, NaphCare was "in the process of making changes to meet the standards and requirements" of those organizations. *Id.*

PageID 354. Based on all of the foregoing conduct, O'Malley contends that her superiors devised a scheme to terminate her employment. *Id*. at PageID 357.

On September 29, 2011, while preparing the medication cart at the beginning of her shift, O'Malley found eight ounces of "loose medications" and "medications that were not stored properly." *Id*. at PageID 355-56. After ensuring that the medications were arranged in compliance with controlling legal standards, O'Malley reported the irregularities. *Id*. at PageID 356. After making the report, supervisors Gary Blair -- NaphCare's Director of Nursing -- and Karina Carlisle -- NaphCare's Health Services Administrator -- approached O'Malley and demanded that they be permitted to inspect the cart. *Id*.

The next day, O'Malley worked the morning shift as the "Charge Nurse" -- meaning she had "the dut[ies] of reconciling [n]arcotics at shift change and . . . . assist[ing] with [the] distribution of any medications needed by the nurses" from NaphCare's in-house pharmacy. *Id*. at PageID 357. That same day, a pharmacist contracted by NaphCare performed "a 'mock' survey." *Id*. This mock survey included a review concerning "custody of pharmacy keys, drug counts, and storage and handling of narcotics and other medications." *Id*. Twice during the survey, Carlisle requested and then returned O'Malley's keys. *Id*. The pharmacist, known only as "Mary," finished the survey and left by 1:00 p.m, and never approached O'Malley about any missing narcotics. *Id*. at 357-58. An hour later, however, Carlisle and Blair informed O'Malley that they were sending a report of missing narcotics to NaphCare's corporate office based on Mary's report. *Id*. Upset, O'Malley asked permission to leave for a short time and, on her way out of the facility, she tossed the cart keys to another nurse. *Id*.

O'Malley continued work as a Charge Nurse for four additional shifts in the following days, but was ultimately terminated on October 5, 2011. *Id*. A "discharge summary" prepared

by NaphCare states that O'Malley was the nurse in charge of the narcotic count at the time narcotics were missing.  Doc. 41-2 at PageID 377.  O'Malley now brings suit against NaphCare alleging the following four claims: (1) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); (2) defamation under Ohio law; (3) wrongful discharge in violation of Ohio public policy; and (4) First Amendment retaliation.  Doc. 41 at PageID 364-73.  NaphCare now moves to partially dismiss the third amended complaint.

## II.

A motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal for "failure to state a claim upon which relief can be granted."  To show grounds for relief, Fed. R. Civ. P. 8(a)(2) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (citing *Twombly*, 550 U.S. at 555).  In determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Id.*

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678.  In addition to well-pleaded allegations in the complaint, the Court may also consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached

to the complaint[.]" *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (citation omitted). A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)).

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) asserts that the court lacks subject matter jurisdiction. Such a motion may consist of a "facial attack," under which the moving party asserts that the allegations of the complaint are not sufficient to establish jurisdiction. *O'Bryan v. Holy See*, 556 F.3d 361, 376-77 (6th Cir. 2009). Under a facial attack, conclusory allegations or legal conclusions masquerading as factual conclusions will not prevent dismissal. *Id.* at 377.

### III.

NaphCare, as noted above, moves to dismiss O'Malley's claims of defamation and First Amendment retaliation, not her ADEA or state law wrongful discharge claims. Doc. 42 at PageID 379. In response, O'Malley voluntarily abandons her First Amendment retaliation claim. Doc. 44 at PageID 397 n.1. Accordingly, the undersigned only addresses the merits of NaphCare's motion as it relates to O'Malley's defamation claim and recommends that her First Amendment retaliation claim be dismissed as abandoned. *See O'Bryan v. Holy See*, 556 F.3d 361, 388 n.14 (6th Cir. 2009).

With regard to the defamation claim, both parties support their arguments by citing Ohio law.  Doc. 42 at PageID 383; Doc. 44 at PageID 399-403.  Under Ohio law, "defamation occurs when a publication contains a false statement 'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in her trade, business or profession.'"  *Jackson v. Columbus*, 883 N.E.2d 1060, 1064 (Ohio 2008) (citation omitted).  The manner of "publication" distinguishes slander, which refers to spoken defamatory statements, from libel, which refers to written or printed defamatory statements.  *Lawson v. AK Steel Corp.*, 699 N.E.2d 951, 954 (Ohio Ct. App. 1997).

To prevail on a defamation claim, plaintiff must show: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting to at least negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication."  *Harris v. Bornhorst*, 513 F.3d 503, 522 (6th Cir. 2008) (quoting *Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Serv., Inc.*, 611 N.E.2d 955, 962 (Ohio Ct. App. 1992)).  Here, in moving to dismiss the defamation claim, NaphCare presents three arguments: (1) that the claim is time-barred by the statute of limitations; (2) O'Malley fails to identify a defamatory statement or identify to whom such statement was made; and (3) the claim is barred as a result of O'Malley having volunteered the same information to a third party.  Doc. 42 at PageID 383-92.

**A.**

NaphCare first argues that O'Malley's defamation claim is barred by the applicable statute of limitations.  Doc. 42 at PageID 379.  Under Ohio law, a defamation claim must be filed "within one year after the cause of action accrued."  Ohio Rev. Code § 2305.11(A).  For a libel

claim, the cause of action begins to accrue upon the first publication of the defamatory statement. *T.S. v. Plain Dealer*, 954 N.E.2d 213, 214 (Ohio Ct. App. 2011).  For a slander claim, the action accrues "at the time the words are spoken."  *Foster v. Wells Fargo Fin. Ohio, Inc.*, 960 N.E.2d 1022, 1026 (Ohio Ct. App. 2011).   Here, O'Malley initiated this suit by moving for leave to proceed *in forma pauperis* on October 4, 2012.[3]  *See* Doc. 1.  The discharge summary containing the allegedly defamatory statement is dated October 4, 2011.  Doc. 41-2 at PageID 378. Accordingly, there is no merit to NaphCare's contention that O'Malley's defamation claims are time-barred by the applicable one year statute of limitations.

### B.

Naphcare next contends that O'Malley fails to sufficiently plead defamation by omitting allegations of specific defamatory statements or identify to whom such statements were published.  Doc. 42 at PageID 380.  However, the discharge summary includes an allegedly false statement that narcotics were "missing" during O'Malley's charge of the cart.  Doc. 41-2 at PageID 377.  O'Malley also alleges facts supporting the assertion that the narcotics were never actually "missing."  Doc. 41 at PageID 361-62.  Based on these allegations, the undersigned concludes that O'Malley sufficiently pleads existence of a defamatory statement.  *See Schoedler v. Motometer Gauge & Equip. Corp.*, 15 N.E.2d 958, 961 (Ohio 1938); *Straus v. Doe*, No. 2003-L-082, 2004 WL 2803254, at *4 n.4 (Ohio Ct. App. Sept. 30, 2004).

With regard to communication of such statement to a third-party, O'Malley alleges that she was denied funding for education under the Workplace Investment Act ("WIA") "because of 'unresolved issues with her former employer over missing narcotics.'"  Doc. 41 at PageID 364.

---

[3] O'Malley filed a motion for leave to proceed *in forma pauperis* on October 4, 2012.  Doc. 1. Such date is the applicable date of filing for statute of limitations purposes.  *See Powell v. Jacor Commc'ns Corporate*, 320 F.3d 599, 603 (6th Cir. 2003); *Truitt v. Cnty. of Wayne*, 148 F.3d 644, 648 (6th Cir.1998).

O'Malley alleges that a counselor specifically mentioned the missing narcotics when informing her that she would not receive WIA funding.  *Id*. at 364, 369.  The Court can reasonably infer from this allegation -- accepted, for purposes of this motion, as true -- that NaphCare communicated the information from O'Malley's discharge summary to the counselor.  Based upon these allegations, the undersigned concludes that O'Malley sufficiently "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Accordingly, the undersigned finds no merit to NaphCare's contentions in this regard.[4]

## C.

Finally, NaphCare argues that O'Malley's own conduct precludes her claim of defamation in its entirety.  In her third amended complaint, O'Malley alleges that, upon exiting NaphCare's facility following her termination, she saw "Captain Roy"[5] near the parking lot and "informed [him] that she was discharged for 'missing narcotics[.]'"  Doc. 41 at PageID 364.  NaphCare cites no authority for the proposition that O'Malley's voluntary communication to Captain Roy precludes the entirety of her defamation claim -- such as damages arising from the allegedly defamatory statement contained in the discharge summary -- as a matter of law.

---

[4] O'Malley also alleges that, "[i]n every application or interview . . . [she] is forced to address the false reason she was fired[.]"  Doc. 41 at PageID 369.  Based on this allegation, it appears that O'Malley also seeks to prove publication on a "compelled self-publication" or "forced publication" theory.  "The forced republication doctrine 'provides for proof of publication where a defamed person is forced to republish defamatory statements to a third party, such as a person who is required to state the reason for leaving his or her former employer when completing an application for employment.'"  *Golem v. Vill. of Put-In Bay*, 222 F.Supp.2d 924, 935 (N.D. Ohio 2002) (citations omitted).  It is not clear whether Ohio courts have "embraced the idea that an alleged victim of defamation can satisfy the publication element of the tort by publishing it himself, *i.e.*, to prospective employers."  *Guy v. McCartney*, No. 00JE7, 2002 WL 1376235, at *6 (Ohio Ct. App. June 3, 2002); *see also Atkinson v. Stop-N-Go Foods, Inc*., 614 N.E.2d 784, 786 (Ohio Ct. App. 1992).  Because NaphCare presents no challenge to the allegations in this regard, the undersigned makes no finding at this time as to whether O'Malley may proceed on this theory.

[5] The third amended complaint provides no further information regarding Captain Roy, such as his full name or his employer.

8

"[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).  Finding that NaphCare fails to fully develop its argument concerning this contention, the undersigned finds such argument waived for purposes of this motion to dismiss.

## IV.

Accordingly, the undersigned **RECOMMENDS** that Defendant NaphCare's motion to dismiss (doc. 42) be **DENIED** as to O'Malley's defamation claim.  In addition, because O'Malley abandons her First Amendment retaliation claim, the undersigned recommends that such claim be **DISMISSED**.

Date:   October 23, 2014                               *s/ Michael J. Newman*
                                                        Michael J. Newman
                                                        United States Magistrate Judge

9

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report and Recommendation is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F), and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.  As is made clear above, this period is likewise extended to **SEVENTEEN** days if service of the objections is made pursuant to Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).