UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

TERESA L. O'MALLEY,

       Plaintiff,                       Case No. 3:12-cv-326

vs.

NAPHCARE INC., *et al.*,                  District Judge Walter H. Rice
                                      Magistrate Judge Michael J. Newman

       Defendants.

---

**ORDER: (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL (DOC. 64); AND (2) GRANTING DEFENDANT'S MOTION TO COMPEL (DOC. 63)**

---

       This civil case is before the Court on Plaintiff Teresa Lynn O'Malley's ("O'Malley") and Defendant NaphCare, Inc.'s ("NaphCare") cross motions to compel discovery.  Docs. 63, 64, 65. Both motions have been fully briefed, *see* docs. 66, 67, 68, 69, 71, and are now ripe for decision.

## I.  BACKGROUND

       O'Malley initiated this case in October 2012, alleging a number of claims stemming from the termination of her employment with NaphCare.[1]  *See* doc. 3.  O'Malley, a Licensed Practical Nurse ("LPN"), worked for NaphCare from 2007 through 2011 at the Montgomery County Jail ("MCJ") in Dayton, Ohio.  Doc. 41 at PageID 350.  NaphCare provides healthcare to MCJ inmates.  *Id.*  A "discharge summary" prepared by NaphCare states that O'Malley was the nurse in charge when certain inmate medications were missing.  Doc. 41-2 at PageID 377.  O'Malley claims that this allegation is wrong and defamatory, and that she was terminated for "speaking out against abuse and inmate safety issues."  Doc. 41 at PageID 370.  O'Malley has filed three

---

[1] The detailed factual allegations of this case have previously been summarized by the Court. Docs. 40, 52.

amended complaints, *see* docs. 27, 29, 41, and NaphCare has moved to dismiss, or partially dismiss, each one.  *See* docs. 24, 33, 42.  O'Malley's third amended complaint alleges three claims[2] against Naphcare: (1) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); (2) defamation under Ohio law; and (3) wrongful discharge in violation of Ohio public policy.  Doc. 41 at PageID 364-71.

O'Malley served her initial written discovery requests on Naphcare in August 2014, including interrogatories and requests for production of documents.  Doc. 64 at PageID 672.  The calendar in this case was later stayed pending resolution of NaphCare's motion to dismiss O'Malley's third amended complaint.  *See* docs. 42, 49, 51.  Following the Court's ruling on NaphCare's motion, NaphCare responded to O'Malley's written discovery requests.  Doc. 64 at PageID 672.  NaphCare also served its first set of interrogatories and requests for production of documents on O'Malley in April 2015, and received responses in June 2015.  Doc. 63 at PageID 569.

Both parties identified alleged deficiencies in the other's discovery responses, and counsel conferred to resolve some, but not all, of the alleged deficiencies.  *See* doc. 64 at PageID 672-73; doc. 63 at PageID 569-71.  On August 7, 2015, the Court held a status conference; discussed the parties' outstanding discovery issues; and ordered counsel to resolve such disputes extrajudicially.  Aug. 10, 2015 Notation Order.  During the Court's follow-up status conference on August 21, 2015, the parties asked for a lengthy extension of the September 8, 2015 discovery deadline in light of the still-unresolved discovery issues.  The parties were then ordered to brief any and all remaining discovery issues.  *See* Aug. 24, 2015 Notation Order.

---

[2] O'Malley's fourth claim alleging First Amendment retaliation was dismissed by the Court in November 2014.  Doc. 54.

## II. STANDARD

"[T]he scope of discovery" encompasses "any nonprivileged matter that is relevant to any party's claim or defense[.]"  Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*  Rule 37 provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production or inspection" if a party fails to provide discovery responses.  Fed. R. Civ. P. 37(a)(3)(B).  The "proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Hendricks v. Hazzard*, No. 2:11-cv-399, 2013 WL 4052873, at \*3 (S.D. Ohio Aug. 12, 2013) (internal citation omitted).  "When the information sought appears to be relevant, the party resisting production has the burden of establishing that the information either is not relevant or is so marginally relevant that the presumption of broad disclosure is outweighed by the potential for undue burden or harm." *Wagner v. Circle W Mastiffs*, No. 2:08-cv-431, 2013 WL 4479070, at \*3 (S.D. Ohio Aug. 19, 2013) (citation omitted).

Under Rule 37 and the corresponding provision of the Southern District of Ohio's Local Rules, counsel have an obligation to attempt in good faith to resolve all discovery disputes extrajudicially (*i.e.*, without Court intervention) before filing motions to compel discovery.  *See* Fed. R. Civ. P. 37(a)(1); S.D. Ohio Civ. R. 37.1  This "meet and confer" requirement, satisfied in this instance, requires counsel to communicate in good faith with each other -- via telephone, letter correspondence, or email -- to attempt to resolve any discovery disputes prior to the filing of a motion to compel.  Such extrajudicial efforts must also be undertaken by counsel before an informal telephone discovery conference is sought with the judicial officer supervising discovery.  S.D. Ohio Civ. R. 37.1.

### III. O'MALLEY'S MOTION TO COMPEL

In her motion, O'Malley argues that many of NaphCare's responses to her requests for production of documents and interrogatories are insufficient. Doc. 64 at PageID 674-78. Such arguments are addressed in turn.

### Production of ESI

First, O'Malley argues that NaphCare has not produced all requested electronically stored information ("ESI"). Doc. 64 at PageID 674-75; doc. 65 at PageID 752-56. Specifically, O'Malley claims that NaphCare has not searched and produced emails from the accounts of Karina Carlisle, Gary Blair, Pam Jamison, and Jeff McIntyre utilizing the search terms she identified. Doc. 64 at PageID 674-75. NaphCare argues that O'Malley's arguments are moot because counsel for the parties, after service of O'Malley's discovery requests, subsequently agreed that the emails of Carlisle, Blair, Jamison, and McIntyre would be searched using limited search terms ("Teresa," "Theresa," "O'Malley," and "Omalley"). Doc. 66 at PageID 769-70; doc. 66-1 at PageID 784-85; doc. 63-3 at PageID 662. NaphCare represents that it produced all non-privileged emails obtained from such search.[3] Doc. 66 at PageID 769-70; doc. 66-1 at PageID 784-85; doc. 63-3 at PageID 662. Accordingly, O'Malley's argument in this regard is moot.

### Privilege Log

O'Malley next argues that NaphCare has failed to produce a privilege log listing documents withheld from production on the basis of attorney client and/or work-product privilege. *See* doc. 64 at PageID 677; doc. 69 at PageID 890. NaphCare represents that it

---

[3] The parties were ordered, on August 10, 2015, to "meet and confer to resolve outstanding discovery issues extrajudicially." It appears that that is precisely what happened in this instance based upon NaphCare's representation that, in an effort to resolve the discovery dispute -- and in good faith -- it conducted searches of additional custodians and supplemented its production. Doc. 66 at PageID 769-70.

produced a privilege log on August 28, 2015, and provided an updated log on September 4, 2015. Doc. 66 at PageID 771; doc. 66-1 at PageID 785. O'Malley has not claimed any deficiencies with regard to the privilege log produced by NaphCare, and her motion to compel production of a privilege log is denied as moot.

**Document Requests 6, 7, 8, 9, 11, 12, 64**

O'Malley's Document Requests 6, 7, 8, 9, 11, 12, and 64 all seek documents related to a "medication error," "blister pack," "missing pill," "missing drugs," or "missing narcotics." Doc. 64-1 at PageID 694-96, 712. O'Malley claims that such information is relevant because "medication errors [are] at the heart of this litigation" and "she was fired for missing drugs." Doc. 64 at PageID 675; *see* doc. 65 at PageID 758-60. NaphCare argues that these requests seek information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, because "NaphCare has never claimed that [O'Malley] was terminated because there was a 'missing pill.'" Doc. 66 at PageID 775-76.

These requests seek relevant information. O'Malley's third amended complaint specifically alleges that she was terminated due to "missing narcotics," and that such rationale was a pretext for firing her "to conceal their unlawful discriminatory motivations" in violation of the ADEA and Ohio public policy. Doc. 41 at PageID 357-66, 370-71. Additionally, O'Malley's defamation claim is premised on the "allegedly false statement that narcotics were 'missing' during O'Malley's charge of the cart." Doc. 52 at PageID 471. As previously noted by this Court, "[t]he discharge summary . . . clearly states that she was responsible for the narcotics at the time they went missing. It blames her for their alleged disappearance and fires her for the same reason." Doc. 54 at PageID 490. O'Malley is entitled to discovery on the issue

of the missing narcotics and, accordingly, NaphCare shall provide documents responsive to O'Malley's Document Requests 6, 7, 8, 9, 11, 12, and 64.[4]

## Document Request 16

O'Malley's Document Request 16 seeks all contracts and/or written agreements between MCJ and NaphCare for the last five years which, O'Malley argues, "delineate[] NaphCare's scope of responsibilities in the jail." Doc. 65 at PageID 760; doc. 64-1 at PageID 697. NaphCare argues that O'Malley has not explained how such documents are relevant to her claims, as "there is no suggestion . . . that the officials at the Montgomery County Jail had any input or involvement in [her] termination." Doc. 66 at PageID 777. Indeed, the Court previously found that "there is no allegation that . . . the Montgomery County Jail influenced, compelled, or provided any input into NaphCare's decision to fire O'Malley." Doc. 40 at PageID 346. Nonetheless, this requested discovery is relevant to show, *inter alia*, that it was within NaphCare's responsibility to administer medication to MCJ inmates. Accordingly, NaphCare shall respond to O'Malley's Document Request 16.

## Document Request 30

O'Malley's Document Request 30 asks NaphCare to provide "diaries, day planners, calendars, appointment books, timelines, or logs kept by Gary Blair, Jeff McIntyre or Karina Carlisle[,]" which, in her motion to compel, O'Malley offered to limit to "all entries mentioning [her.]" Doc. 64-1 at PageID 702; doc. 64 at PageID 678. Such a request seeks relevant information within the meaning of Fed. R. Civ. P. 26(b). NaphCare represents that, on August 27, 2015, it supplemented its response and stated that, if it found responsive documents during its

---

[4] To the extent that NaphCare objected to document requests 6, 7, 8, 9, 11, 12, and 64 -- and other discovery propounded by O'Malley -- in its discovery responses on grounds not raised in its memorandum in opposition, the Court considers such objections waived for the purposes of determining O'Malley's motion to compel.

additional ESI searches, it would produce them.  Doc. 66 at PageID 778.  In its motion -- a document signed by counsel for NaphCare, an officer of this Court -- NaphCare represents that no responsive documents were discovered during the additional searches.  *Id.*  NaphCare cannot be compelled to produce that which does not exist.  Accordingly, O'Malley's motion is moot with respect to ESI.  However, Naphcare shall conduct a search of all papers or other non-ESI materials and produce relevant documents.

### Document Request 43

In this document request, O'Malley seeks "performance evaluations of Gary Blair, Jeff McIntyre and/or Karina Carlisle by Defendant NaphCare in the last five years[.]"  Doc. 64-1 at PageID 706.  In her motion, O'Malley states that such documents are relevant in that "comments regarding these actors' interactions with [O'Malley,] including her termination[,] would likely be found in the evaluation[s]."  Doc. 65 at PageID 761.  In response, NaphCare argues that it "supplemented its response [on August 27, 2015] and produced 'any performance evaluations received by [Blair, McIntyre, and/or Carlisle] between the date of [O'Malley's] termination and 2013.'"  Doc. 66 at PageID 778.  However, a review of NaphCare's supplemental response reveals that NaphCare stated that "[t]o the extent that any exist, Defendant will produce" the performance evaluations, not that it *had* produced the same.  Doc. 64-3 at PageID 739.

Accordingly, NaphCare shall either produce the evaluations of Blair, McIntyre, and/or Carlisle -- that were created or received between the date of O'Malley's termination and December 2013, and that mention O'Malley by name or that comment upon her termination -- or supplement its response to clarify that no responsive documents exist.

**Document Requests 61, 70**

NaphCare states that, in regard to these requests, it supplemented its response on August 27, 2015 claiming that NaphCare "is not aware of any . . . responsive documents." Doc. 66 at PageID 779-80. Because it appears that the parties have already resolved this issue informally, the Court finds O'Malley's motion to compel moot in this regard.

**Document Request 68**

This document request seeks all documents related to the terminations of Barbara Schenck, Mone Horman, Judy Armstrong, and Donna Stoddard. O'Malley claims that these individuals are members of the age protected class and could establish that NaphCare "engaged in similar discriminatory terminations[.]" Doc. 65 at PageID 761; doc. 64-1 at PageID 713-14.

NaphCare argues that because O'Malley has not alleged any type of class-based or pattern-or-practice claim, the terminations of other employees are not relevant. Doc. 66 at PageID 779. In support, NaphCare sites to *Jones v. St. Jude Med. S.C., Inc.*, where the Court found "me too" evidence, involving the plaintiff's co-workers' claims of discrimination, inadmissible for the purposes of a summary judgment motion. 823 F. Supp. 2d 699, 734 (S.D. Ohio 2011). O'Malley correctly notes that evidence need not be admissible to be relevant under Rule 26(b)(1) and, further, that *Jones* recognizes such evidence may indeed be admissible (for an individual claim of discrimination) when the plaintiff can show that the "'me too' evidence is logically and reasonably tied to her specific adverse employment actions because the same actors, reasons, and circumstances were involved." *Id.* (citing *Geiger v. Pfizer, Inc.*, No. 2:06-cv-636, 2009 WL 1026479 (S.D. Ohio Apr. 15, 2009)); Fed. R. Civ. P. 26(b)(1).

The Court finds that O'Malley is entitled to discover the circumstances surrounding the terminations of Schenck, Horman, Armstrong, and Stoddard.  Therefore, NaphCare shall fully respond to Document Request 68.

### O'Malley's Interrogatories

O'Malley challenges NaphCare's responses to her Interrogatories 2, 6, 7, 8, 9, and 10. With regard to Interrogatory 2, the Court finds NaphCare's answer responsive.  O'Malley may obtain a more detailed explanation of the reasons for her termination through deposition.  As to Interrogatory 6, for the reasons set forth above concerning Document Requests 6, 7, 8, 9, 11, 12, and 64, NaphCare shall answer further regarding any and all investigations into missing pill(s) or missing drugs.

Finally, NaphCare objected to Interrogatories 7-10 on the grounds that O'Malley had "exceeded the maximum number of interrogatories permitted" under Rule 33.  Doc. 64-1 at PageID 690-92.  Pursuant to Fed. R. Civ. P. 33(a)(1), "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts."  O'Malley now "seeks leave to have [NaphCare] respond fully to these interrogatories to the extent they can be construed as beyond the maximum number of permissible interrogatories."  Doc. 64 at PageID 677.  NaphCare argues that it properly objected to Interrogatories 7-10 because "[a]lthough not separately numbered, Interrogatory Nos. 1 through 6 actually contain at least 41 discrete subparts."  Doc. 66 at PageID 775.  The Court makes no determination as to whether O'Malley's interrogatory requests, including all discrete subparts, exceed the number permitted by Rule 33.  Instead, to the extent she has exceeded the number of interrogatories allowed by Rule 33, the Court grants her leave and orders NaphCare to respond to Interrogatories 7-10.

## IV.  NAPHCARE'S MOTION TO COMPEL

### Interrogatory 2

Absent any objection by O'Malley to provide the remaining information NaphCare seeks in this interrogatory -- *i.e.,* contact information for James See, Lori Banks, Melissa Radford, Gary Blair, Casandra Miles, Melissa of OSBN, pharmacist Mary, and Judy Armstrong -- O'Malley is ordered to supplement her response accordingly.  *See* doc. 71 at PageID 927; doc. 68 at PageID 849.

### Interrogatory 7

NaphCare's Interrogatory 7 requests that O'Malley itemize her damages, and explain the factual basis and calculation for each component.  Doc. 63-2 at PageID 614.  In her response, O'Malley referred to her expert report which calculates her lost earnings, *see id.*, but claimed that "[i]t would be impossible to identify all the various damages in that there is so many ways in which NaphCare's termination and dissemination of defamatory information affected her life, *i.e.*, damage to her reputation, foreclosure on her house, destroyed credit, mental and emotional distress[.]"  *Id.*  As to those categories of damages, O'Malley claims that they are "unliquidated damages that are within the province of the jury to determine[,]" and that she has no information with which to supplement her response to Interrogatory 7.  Doc. 71 at PageID 928; Doc. 63-2 at PageID 614.  NaphCare argues that it is entitled to discovery regarding O'Malley's estimation of her non-economic damages, because O'Malley is required to disclose such information under Rule 26.  Doc. 63 at PageID 572-73.

Rule 26 requires a party to disclose "a computation of any category of damages claimed by" such party.  Fed. R. Civ. P. 26(a)(1)(A)(iii).  Courts in this circuit have held that "Rule 26(a)(1)(A)(iii) is unambiguous -- it applies to *each* category of damages claimed; it is not

limited to economic damages." *Lucas v. Transamerica Life Ins. Co.*, No. 5:10-cv-76, 2011 WL 5148883, at *1 (E.D. Ky. Oct. 21, 2011) (emphasis in original); *see also Carver v. Petry*, No. 12-cv-131, 2013 WL 160277, at *1 (E.D. Ky. Jan 15. 2013). In *Lucas*, the Court reasoned that, although a jury may determine the final award, "the parties and the Court should know the range [of damages] sought and basis for same" because "the economic scope of a case informs decisions about resource use, burdensomeness, settlement, and potentially insurance issues." 2011 WL 5148883, at *1. The Court finds this reasoning persuasive.

Accordingly, O'Malley shall supplement her response to Interrogatory 7 and "identify an amount -- either a specific sum or a range -- to be sought as to each non-economic category" of damages she claims, although the Court is cognizant that she may be unable to "precisely explain [her] quantification[.]" *Id.*

## Interrogatory 11

Interrogatory 11 requests that O'Malley identify every position she has held since her October 2011 termination from NaphCare, and provide information including, *inter alia*, any discipline she has received in connection with that employment. Doc. 63-2 at PageID 615-16. In response to O'Malley's objection, NaphCare has limited Interrogatory 11(f) to solely written discipline. Doc. 68 at PageID 850. O'Malley agreed to supplement her response, but has failed to do so. *See* doc. 71 at PageID 929. Accordingly, O'Malley shall fully respond to Interrogatory 11.

## Interrogatory 13

O'Malley is ordered to supplement her response to Interrogatory 13, including W-2s from the years 2011-2014, and her tax return for 2014.

**Interrogatory 15**

Interrogatory 15 requests information related to health care providers with whom O'Malley treated from January 1, 2009 to the present in connection with her claim for emotional distress. Doc. 63-2 at PageID 618. In her response, O'Malley agreed to provide responsive documents, limited to the date of termination (*i.e.,* October 2011) to the present. *Id.* at PageID 618-19. O'Malley later agreed to produce responsive documents from January 2010 to the present, *see* doc. 67-5 at PageID 840; however, NaphCare did not accept O'Malley's limitation, *see* doc. 67-4 at PageID 832.

NaphCare argues that O'Malley's proposed temporal limitation is improper -- because if O'Malley had a pre-existing mental health condition in 2009, that would be relevant to her claim that NaphCare's conduct was the cause of her later emotional distress -- and that, even with this limitation, O'Malley has produced no responsive documents. Doc. 63 at PageID 576. The Court finds merit to NaphCare's position. Accordingly, O'Malley shall fully respond to Interrogatory 15 by providing the requested information for the time period of January 1, 2009 to present.

**Document Request 1**

As indicated *supra*, with regard to NaphCare's thirteenth interrogatory, O'Malley shall supplement her production of documents, including W-2s from the years 2011 through 2014, and her tax return for 2014.

**Document Request 9**

Because O'Malley does not object to Document Request 9, and merely indicates that she lacked sufficient time to comply, doc. 71 at PageID 932, O'Malley shall supplement her document production in this regard.

**Document Requests 10, 24**

NaphCare's Document Requests 10 and 24 seek documents related to O'Malley's search for educational or vocational opportunities during or after her employment with NaphCare. Doc. 63-2 at PageID 623. In response, O'Malley states she "will search for" responsive documents. *Id.* at PageID 624, 626. NaphCare argues that O'Malley's production to date -- of a single responsive document -- is insufficient. Doc. 63 at PageID 578. O'Malley has not objected to providing these documents, doc. 63-2 at PageID 624, 626; doc. 71 at PageID 932-33, and the Court finds these document requests reasonable. Accordingly, O'Malley shall either supplement her production in response to these document requests, or supplement her discovery responses to indicate that no other responsive documents exist.

**Document Request 13**

For the reasons set forth above in regard to Document Request 1 and Interrogatories 7 and 13, O'Malley shall supplement her response to this document request.

**Document Request 15**

NaphCare's Document Request 15 seeks evidence of communications between O'Malley and other individuals regarding this litigation or its subject matter including, *inter alia*, posts on social media platforms such as Facebook and LinkedIn. Doc. 63-2 at PageID 625. O'Malley objects to the scope of this request, and counsel for both sides conferred to identify search terms to aid in locating responsive documents. *Id.*; doc. 63 at PageID 579. NaphCare argues that while O'Malley has produced "emails containing what purports to be comments from other people on social media posts made by [O'Malley,]" she has not provided the actual social media posts to which those comments were directed. Doc. 63 at PageID 579. O'Malley does not dispute the relevancy of this request, but claims that she experienced "technical difficulties

and/or lack of computer sophistication" which prevented her from fully complying with this request. Doc. 71 at PageID 934-35. O'Malley shall supplement her production utilizing her counsel's assistance or the services of a third-party vendor, if necessary.

### Document Request 20

NaphCare's Document Request 20 requests that O'Malley sign and produce employment and medical authorization forms provided by NaphCare. Doc. 63-2 at PageID 616, 618, 626. O'Malley's medical records are relevant to her claim for emotional distress damages, and her employment records are relevant to the issues of mitigation and damages. Accordingly, O'Malley shall provide NaphCare with the signed authorization forms. *Noble v. Ruby Tuesday Rests., Inc.*, No. 2:06-cv-259, 2007 WL 3125131, at *2 (S.D. Ohio Oct. 23, 2007).

### Document Requests 22, 23

O'Malley shall either supplement her production with regard to these document requests or supplement her discovery responses to indicate that no responsive documents exist.

### V.  CONCLUSION

For the foregoing reasons, O'Malley's motion to compel (doc. 64) is **GRANTED** in regard to Document Requests 6, 7, 8, 9, 11, 12, 16, 30, 43, 64 and 68 and Interrogatories 6, 7, 8, 9 and 10. O'Malley's motion to compel is otherwise **DENIED**. NaphCare's motion to compel (doc. 63) is **GRANTED**. The Court finds a fee award not justified in this instance. *See* Fed. R. Civ. P. 37(a)(5)(A)(iii). The parties **SHALL** supplement their discovery responses within **14 DAYS** of the issuance of this Order, *i.e.,* on or before **NOVEMBER 4, 2015**.

> **IT IS SO ORDERED.**

Date:  October 21, 2015                           *s/ Michael J. Newman*
                                                                          Michael J. Newman
                                                                          United States Magistrate Judge